### LOI HOA v. NAGLE, Commissioner of Immigration.

### LAM YOUNG v. SAME.

(Circuit Court of Appeals, Ninth Circuit. June 1, 1926.)

Nos. 4813, 4814.

Aliens ⟨key⟩28—Chinese merchants held entitled to admission on certificates of authorities of Indo-China, where they resided; "subject" (Treaties with China of Nov. 17, 1880, and March 17, 1894 [22 Stat. 828, and 28 Stat. 1210]; Act May 6, 1882, § 6, as amended by Act July 5, 1884 [Comp. St. § 4293]).

Under Act May 6, 1882, § 6, as amended by Act July 5, 1884 (Comp. St. § 4293), requiring Chinese persons other than laborers, entitled to enter the United States thereunder, to obtain the permission of and be identified as so entitled by the Chinese government, "or of

such other foreign government of which at the time such Chinese person shall be a subject" and in view of the Treaties with China of Nov. 17, 1880, and March 17, 1894, Chinese merchants, resident in Indo-China but owing general allegiance to the Chinese Republic are "subjects" of Indo-China within the meaning of the statute and entitled to admission on the proper identification certificates of its officials.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Subject.]

Appeals from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Petitions by Loi Hoa and Lam Young, on behalf of Phuong Con, against John D. Nagle, Commissioner of Immigration at San Francisco, for writs of habeas corpus. From judgments denying the writs, petitioners appeal. Reversed and remanded, with instructions.

Joseph P. Fallon, of San Francisco, Cal., for appellant Loi Hoa.

Dion R. Holm, of San Francisco, Cal., for appellant Lam Young.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. These two appeals present the question of the right of Chinese merchants, citizens and subjects of the republic of China, to enter the United States as such merchants under authority of certificates issued in regular form in compliance with section 6 of the Act of May 6, 1882, 22 Stat. 58, as amended by the Act of July 5, 1884, 23 Stat. 115 (Comp. St. § 4293), but made by a French official of French Indo-China, at Saigon, and not by an official or representative of the republic of China; the applicants having been domiciled merchants for a number of years in Indo-China. Their right to enter the United States was denied by a board of special inquiry, and on appeal to the Department of Labor the ruling was affirmed, on the ground that the applicants were only residents and not naturalized citizens of Indo-China, and that the country to which they owed full and unqualified allegiance at the time of their coming to the United States is the country from which they must obtain their certificates. Section 6 of the act requires that a Chinese merchant, on coming to the United States "shall obtain the permission of and be identified as so entitled by the Chinese

government, or of such other foreign government of which at the time such Chinese person shall be a subject, in each case to be evidenced by a certificate issued by such government."

The solution of the question here involved depends upon the construction to be given to the word "subject," as used in the statute. The word may have a variant meaning in treaties or statutory enactments, according to the context and to the purpose intended to be subserved. Thus, in Respublica v. Chapman, 1 Dall. 53, 60, 1 L. Ed. 33, it was held that it implies a subjection to some sovereign power, and means "one who owes obedience to the laws, and is entitled to partake of the elections into public office." But in The Pizarro, 2 Wheat. 227, 246 (4 L. Ed. 226), it was held that in a certain section of our Treaty with Spain (8 Stat. 138) the words "subjects," "people," and "inhabitants" were "indiscriminately used as synonymous." The court said: "Indeed, in the language of the law of nations, which is always to be consulted in the interpretation of treaties, a person domiciled in a country, and enjoying the protection of its sovereign, is deemed a subject of that country. He owes allegiance to the country, while he resides in it; temporary, indeed, if he has not, by birth or naturalization, contracted a permanent allegiance, but so fixed that, as to all other nations, he follows the character of that country, in war as well as in peace." In Carlisle v. United States, 16 Wall. 147, 154 (21 L. Ed. 426), it was said: "The citizen or subject owes an absolute and permanent allegiance to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign. The alien, whilst domiciled in the country, owes a local and temporary allegiance, which continues during the period of his residence."

Appellants contend that the word "subject," as used in the Exclusion Act, means one who is resident in or domiciled in "such other foreign" country, and they find support of that construction in the words "of which at the time." We think the contention must be sustained. The treaties with China and the statutes enacted in pursuance thereof were obviously intended only for the benefit of American citizens and Chinese subjects. To become subjects of Indo-China, so as to owe allegiance to the government thereof, these appellants would have been required to renounce their allegiance to the country in which they were born, and all rights which

they theretofore had as subjects of China. We think it inconceivable that, either by the United States or by China, the benefits of the treaty here involved were intended to be extended to subjects of other nations.

This reasoning is rejected by the Department of Labor for the reason, it is said, "that Chinese may, if they so desire, become citizens or subjects of other nations by naturalization," and thus obtain certificates under section 6. But it is not to be supposed that, in entering into the treaties with the United States, the Chinese government had in mind the protection of Chinese who had transferred their allegiance to other countries and had ceased to be Chinese subjects. This is denied by .the very terms of the treaties. In the Treaty of November 17, 1880 (22 Stat. 828), it was declared that the purpose thereof was to promote commercial relations "between the citizens and subjects of the two powers." And in the Treaty of March 17, 1894 (28 Stat. 1210), it was recited that the purpose was to protect "the citizens or subjects of each within the jurisdiction of the other." And it is significant, as expressing the understanding of the high contracting parties, that in that treaty, which was in force for a period of 10 years, it was expressly provided that, in order that Chinese merchants and others of the favored class might be admitted to the United States, they might produce a certificate from their government, "or the government where they last resided."

The judgment in each case is reversed, and the cause is remanded, with instruction to issue the writ of habeas corpus as prayed for.